<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

**PLATINUM SUPPLY GROUP LLC**,

              Plaintiff,

        v.

**A&O USA INC., *et al.*,**

              Defendants.

Civil Action No. 24-643 (ZNQ) (JTQ)

**OPINION**

---

<u>**QURAISHI, District Judge**</u>

      **THIS MATTER** comes before the Court upon Defendants—A&O USA Inc. ("A&O"), Albert Bassoul ("Bassoul"), and Freddy Arazi ("Arazi") (collectively, "Defendants")—Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ("Motion," ECF No. 15.) Defendants filed a Brief in support of their Motion.  ("Moving Br.," ECF No. 15-1.)  Plaintiff Platinum Supply Group LLC ("Plaintiff") submitted a Brief in Opposition ("Opp'n Br.," ECF No. 19), to which Defendants replied ("Reply Br.," ECF No. 20).  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1]  For the reasons set forth below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** the Motion.

---

[1] Hereinafter, all references to Rules refer to the Federal Rules of Civil Procedure unless otherwise noted.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

A.      **FACTUAL BACKGROUND**[2]

As alleged in the Amended Complaint, Plaintiff brings this action against Defendants under various breach of contract theories as well as fraud "on the basis of Defendants' knowing and intentional sale of worthless, expired, and adulterated goods." (Am. Compl. ¶ 1, ECF No. 12.)

Defendants are in the business of selling and distributing consumer products. (*Id.* ¶ 21.) Plaintiff is a re-seller of various consumer products through its Amazon storefront and other avenues. (*Id.* ¶¶ 22–24.) As alleged, on or about August 25, 2023, Bassoul, who is the Chief Executive Officer and co-owner of A&O, (*id.* ¶ 6), "contacted Plaintiff and offered to sell 22,000 units of branded sanitizing alcohol wipes, packaged in bundles of three, fifty count, wipes." (*Id.* ¶ 24.) Defendants Bassoul and Arazi allegedly independently verified "in writing that the [wipes] were new and unexpired." (*Id.* ¶ 26.) A few days later, Plaintiff agreed to purchase the wipes from Defendants at a price of $3.25 per unit, totaling $71,500.00 for the wipes. (*Id.* ¶¶ 27–28.) Plaintiff paid the full price in late September 2023, and Defendants shipped approximately 10,000 units directly to Amazon for re-sale by Plaintiff. (*Id.* ¶¶ 29–30.) In October 2023, Plaintiff started receiving numerous complaints from its customers that the wipes were expired. (*Id.* ¶ 31.)

When confronted by Plaintiff, at Plaintiff's demand, Defendants provided photographs of the wipes' packaging to prove that the products lacked an expiration date. (*Id.* ¶¶ 35.) However, in December 2023, Plaintiff received the remainder of the wipes it purchased, and was "able to observe that the [wipes] indeed h[ad] expiration dates . . . and were about eight months past the expiration date when Defendants had offered the Goods for sale." (*Id.* ¶ 37.)[3] Plaintiff accuses

---

[2] For the purposes of considering this Motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] Plaintiff included various photographs in its Amended Complaint to support the above allegations. (*Id.* ¶¶ 35, 37.)

Defendants of erasing, obscuring, or otherwise removing the expiration dates from the wipes' packaging. (*Id*. ¶ 36.) As alleged, the wipes were "already at least eight (8) months past their expiration date at the time of the offer to sell the Goods to Plaintiff." (*Id.* ¶ 39.) Plaintiff asserts that Defendants were allegedly (1) "aware the Goods were intended to be sold as new on Amazon.com" and (2) "aware the Goods were expired and intended to adulterate the Goods prior to shipment to Plaintiff to conceal the fact that the Goods expired." As a result of Defendants' misconduct, Plaintiff suffered financial harm, including Amazon charging it storage fees, as well as reputational harms to its business. (*Id.* ¶¶ 40–41, 44–47.) In total, Plaintiff seeks to recoup losses of "at least $147,180.00." (*Id.* ¶ 47.)

Based on the above factual background, the Amended Complaint asserts four causes of action. First, Plaintiff alleges that Defendants breached the contract they entered into for the wipes (Count One) because the wipes were not new and unexpired, contrary to Defendants' representations and the terms of the agreement.[4] (*Id.* ¶¶ 48–54.) Second, Plaintiff brings a claim for fraudulent inducement (Count Two) because Defendants (1) made "knowingly false" representations that the Goods were new and unexpired, (2) removed, erased, and concealed the expiration dates prior to shipping the wipes to Plaintiff, and (3) misled Plaintiff by sending edited photographs that did not show expiration dates.[5] (*Id.* ¶¶ 55–65.) Third, Plaintiff brings a cause of action for breach of the implied warranties of non-infringement, fitness, and merchantability because Defendants are merchants, Defendants knew Plaintiff intended to re-sell the wipes, and the wipes sold by Defendants infringe a third-party manufacturer's intellectual property rights. (*Id.* ¶¶ 66–75 (citing N.J. Rev. Stat. § 12A:2-312)). Plaintiff further alleges that the wipes sold

---

[4] The purported contractual agreement is not attached to the Amended Complaint.
[5] It is unclear from the face of the Amended Complaint how Plaintiff knows the photographs were edited other than having later received the remainder of the shipment which included expiration dates on the packaging. (*Id.* ¶ 37.)

"would not pass without objection in the trade," and are in violation of Section 2-314 of the New Jersey Uniform Commercial Code. (*Id.* ¶¶ 82–84.) With respect to the implied warranty of fitness for a particular purpose, because Defendants knew of Plaintiff's purpose regarding the goods, Defendants violated Section 2-315 of the New Jersey Uniform Commercial Code. (*Id.* ¶¶ 92–95 ("The Goods . . . were not suitable for th[e] particular purpose [of re-sale] because the Goods were labelled with an expiration date that had passed about eight months earlier.")). And regarding the implied warranty of merchantability, Plaintiff alleges that the goods were not merchantable because they were "expired and adulterated," and were below fair average quality. (*Id.* ¶¶ 96–99.) Finally, Plaintiff brings a cause of action for unjust enrichment (Count Four) because "[i]t is against equity and good conscience to permit Defendants to retain the funds Plaintiff paid" for the purportedly non-conforming goods. (*Id.* ¶ 104.)

**B.    PROCEDURAL HISTORY**

Plaintiff filed its initial complaint on February 2, 2024. (ECF No. 1.) Thereafter, on April 11, 2024, in response to a motion to dismiss by Defendants that was later withdrawn, Plaintiff amended its complaint. (Am. Compl., ECF No. 12.) Defendants filed the instant Motion on April 30, 2024. (ECF No. 15.)

**II.    <u>JURISDICTION</u>**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 given that the parties are diverse and the amount in controversy exceeds $75,000.

III.   **LEGAL STANDARD**

    A.   **RULE 12(b)(6)**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Lastly, generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  But where a document is "integral to or explicitly relied upon in the complaint," it "may be considered without converting the motion to dismiss into one for summary judgment" under Rule 56.  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

### B.    RULE 9(b)

Fraud-based claims, like Plaintiff's fraudulent inducement claim, are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  For a fraud-based claim, a court may grant a motion to dismiss pursuant to Rule 9(b) if the plaintiff fails to plead with the required particularity.  *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007).  The level of particularity required is such that a defendant is provided with sufficient details to be put on notice of the "precise misconduct with which [it is] charged."  *Id*. at 200 (citation omitted).  At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted).

## IV.    <u>DISCUSSION</u>

The court will first address whether it should dismiss all claims against Bassoul and Arazi in their individual capacities.  Next, the Court will address each Count in the order alleged in the Amended Complaint.

### A.    CLAIMS AGAINST BASSOUL AND ARAZI

Defendants argue that Plaintiff fails to satisfy the pleading standard for piercing the corporate veil against the individual Defendants Bassoul and Arazi because the allegations against

them are conclusory. (*Id.* at 8.) Plaintiff responds that the individual Defendants are proper parties because it specifically alleges why the Defendants are individually liable, and it presents a plausible claim for piercing the corporate veil. (Opp'n Br. at 15–17.)

There is no allegation that either Bassoul or Arazi were personally bound by the agreement between Plaintiff and A&O. Under New Jersey law,[6] courts "begin with the fundamental proposition[] that a corporation is a separate entity from its shareholders . . . and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983). A court can "ignore a corporation's separate entity in order to prevent it 'from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law.'" *Rowen Petroleum Props., LLC v. Hollywood Tanning Sys., Inc.*, 899 F. Supp. 2d 303, 308 (D.N.J. 2012) (quoting *Melikian v. Corradetti*, 791 F.2d 274, 281 (3d Cir. 1986)).

To pierce the corporate veil, "a plaintiff must show that: (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." *Bd. of Tr. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002); *see also Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019) (finding two elements are required for piercing the corporate veil: (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist;" and (2) "the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice").

---

[6] There is no dispute that New Jersey law applies to the claims alleged in the Amended Complaint.

To satisfy the first element, "a plaintiff must allege that the parent 'completely dominate[s] the finances, policy, and business practice with respect to the subject transaction' to such a degree that the subsidiary has 'no separate mind, will, or existence of its own.'" *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 507 (D.N.J. 2009) (quoting *Craig*, 843 F.2d at 150). A plaintiff must also allege "such dominion or control was exercised to a substantial degree." *See Marketvision/Gateway Rsch., Inc. v. Priority Pay Payroll, LLC*, Civ. No. 10-1537, 2011 WL 1640459, at *4 (D.N.J. Apr. 29, 2011) (citing *Craig*, 843 F.2d at 150). The Third Circuit provided several non-binding factors relevant to the inquiry of whether the parent company completely dominates a subsidiary, including:

> gross undercapitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and . . . [whether] the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Holzli v. DeLuca Enters.*, Civ. No. 11-06148, 2012 WL 983693, at *2 (D.N.J. Mar. 21, 2012) (quoting *Craig*, 843 F.2d at 150).

To satisfy the second element, "a plaintiff need not prove common law fraud but [must] instead demonstrate that the defendants, via the corporate form, perpetrated a fraud, injustice, or the like, a less exacting standard." *Holzli*, 2012 WL 983693 at *2 (citing *Chen v. HD Dimension, Corp.*, Civ. No. 10-863, 2010 WL 4721514, at *4 (D.N.J. Nov. 15, 2010)). "[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity." *Tung v. Briant Park Homes, Inc.*, 670 A.2d 1092, 1096 (N.J. Super. Ct. App. Div. 1996).

Here, based on a liberal reading of the Amended Complaint, the Court concludes that Plaintiff has failed to allege sufficient facts to plausibly support piercing the corporate veil as to Counts One (breach of contract), Three (breach of the implied warranties), and Four (unjust enrichment). There are no allegations that the individuals dominate the finances, policies, or business practices of the corporation. Plaintiff simply alleges that Bassoul and Arazi are A&O's only two employees, (Am. Compl. ¶ 9), that they "actively advertise[] and offer[] goods for sale" (*id.* ¶ 11), that they are alter egos of A&O because they do not maintain corporate formalities, (*id.* ¶ 14), and that they "independently represented to Plaintiff that the Goods were new and unexpired." (*Id.* ¶ 26.)

As a separate matter, Plaintiff has also failed to allege facts sufficient for Bassoul and Arazi to be personally liable for the harm caused by A&O as a result of the company's alleged breach of contract or breach of the implied warranties. The individual Defendants are alleged to have represented that the wipes were new and unexpired, but this is not persuasive because, as a practical matter, the only way for a corporation to make such a representation is through its agents, as was done here.

In short, the Amended Complaint's allegations do not show "such dominion or control," or the factors that the Third Circuit instructs district courts to consider for piercing the corporate veil. *Contra Tidman v. Eminence Hardscapes*, LLC, Civ. No. 22-5441, 2023 WL 3224594, at *10 (D.N.J. May 3, 2023) (concluding that "Plaintiff [had] allege[d] multiple of the *Craig* factors for unity of interest and ownership," which is not the case here). Counts One (breach of contract), Count three (implied warranty), and Count Four (unjust enrichment) will therefore be dismissed against Bassoul and Arazi without prejudice.

As to Count Two—fraudulent inducement—the Court reaches a different conclusion. Plaintiff alleges particularized facts sufficient to state a claim for fraudulent inducement as to Bassoul and Arazi personally. Notably, the Amended Complaint alleges that "Bassoul and Arazi each independently represented to Plaintiff in writing that the Goods were new and unexpired," (*id.* ¶ 26), and that Bassoul and Arazi "personally directed the removal and obstruction of the expiration dates in order to defraud Plaintiff," (*id.* ¶ 38).

In New Jersey, the general rule is that a corporate officer or director is not personally liable for the torts of a corporation based solely upon his official position within the corporation. *Charles Bloom & Co. v. Echo Jewelers*, 652 A.2d 1238, 1243 (N.J. Super. Ct. App. Div. 1995). However, a corporate officer or director may be personally liable if he: (1) commits a tort in his individual capacity; (2) directs the tortious act; or (3) participates or cooperates in the commission of the tort. *Id.* A predicate to this type of liability is that the "corporation owed a duty of care to the victim, the duty was delegated to the officer or director and the officer or director breached the duty of care by his own conduct." *Saltiel d/b/a Edgewater Design Assoc. v. GSI Consultants, Inc.*, 788 A.2d 268, 272 (N.J. 2002) (citing 3A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 1137 (rev. perm. ed.1994) (footnotes omitted)). Moreover, an individual officer is also liable for the conduct of the corporation if: (1) the corporation is organized and operated as a mere instrumentality, or alter ego, of the officer, (2) the officer uses the corporation to commit fraud, injustice or circumvent the law, and (3) the officer fails to maintain the corporate identity. *N. Am. Steel Connection, Inc. v. Watson Metal Prod. Corp.*, Civ. No. 08–4247, 2010 WL 3724518, at *11 (D.N.J. Sept. 14, 2010).

At this stage of the proceedings, the Court concludes that Plaintiff plausibly alleges that Bassoul and Arazi participated directly in a fraudulent scheme to induce Plaintiff into purchasing

the wipes. (Am. Compl. ¶ 38.) For example, Plaintiff alleges that the individual Defendants "independently represented to Plaintiff in writing that the Goods were new and unexpired," (*id.* ¶ 26), that on October 20, 2023 [Bassoul and Arazi] stated in writing that "the goods d[id] not contain expiration dates," (*id.* ¶ 33), that "Defendants had erased, obscured, or otherwise removed the expiration dates . . . in order to conceal the fact that the Goods were expired," (*id.* ¶ 36), and that Bassoul and Arazi "personally directed the removal and obstruction of the expirations dates in order to defraud Plaintiff," (*id.* ¶ 38.) Given the direct relationship between A&O and Plaintiff, it is apparent from the facts as pled in the Amended Complaint that Bassoul and Arazi, corporate officers of A&O, could be personally liable because they allegedly committed a tort and participated in the fraudulent conduct.

Accordingly, the portion of Defendants' Motion to Dismiss seeking to dismiss the breach of contract, implied warranty, and unjust enrichment claims against Bassoul and Arazi will be **GRANTED**. Those claims against Bassoul and Arazi will be dismissed without prejudice, and Plaintiff will be given leave to amend its Amended Complaint. However, Plaintiff's claim for fraudulent inducement against Bassoul and Arazi will survive. Consequently, the portion of Defendants' Motion to Dismiss seeking to dismiss the fraudulent inducement cause of action against Bassoul and Arazi will be **DENIED**.

### B. BREACH OF CONTRACT

Defendants argue that Plaintiff's breach of contract claim against all Defendants should be dismissed because Plaintiff fails to identify any provision of a contract between the parties that was allegedly breached. (Moving Br. at 13–14.) Defendants moreover contend that the breach of contract claim should be dismissed as duplicative of the breach of the implied warranty claim. (*Id.* at 14–15.) In its opposition, Plaintiff maintains that there is a valid contract between the parties

because the Amended Complaint identifies the date of the offer, the terms, the date of acceptance, and that there was performance, and caselaw suggests that plaintiffs need not submit the actual contract.  (Opp'n Br. at 5.)  Plaintiff concedes that the breach of contract and breach of warranty claims may be similar, but insists that they are not duplicative because the breach of contract claim alleges that Defendants made an express representation that the goods were suitable for sale on Amazon.  (*Id.* at 6) (citing Am. Compl. ¶ 25.)

To plead a claim for breach of contract under New Jersey law, a plaintiff must allege "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties."[7]  *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002); *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) ("Our law imposes on a plaintiff the burden to prove four elements: first, that '[t]he parties entered into a contract containing certain terms'; second, that 'plaintiff[s] did what the contract required [them] to do'; third, that 'defendant[s] did not do what the contract required [them] to do[,]' defined as a 'breach of the contract'; and fourth, that 'defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s]'" (quoting N.J. Model Civil Instr. 4.10A (May 1998))).  A party to the contract "violates the terms of a contract by failing to fulfill a requirement enumerated in the agreement."  *Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019).

Moreover, an enforceable contract may occur once a party communicates an offer and another party demonstrates acceptance.  *Gordon v. Dailey*, Civ. No. 14-7495, 2018 WL 1509080, at *8 (D.N.J. Mar. 27, 2018).  Importantly, acceptance may be shown by words or conduct.  *See,*

---

[7] A claim for a breach of contract is subject to the liberal notice pleading requirements found in Rule 8(a).  *See, e.g.*, *St.-Val v. Domino's Pizza, LLC*, Civ. No. 06-4273, 2007 WL 2049120, at *2 (D.N.J. July 12, 2007) (applying Rule 8(a) to a plaintiff's breach of contract claim).

*e.g.*, *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) ("An offeree may manifest assent to the terms of an offer through words, creating an express contract, or by conduct, creating a contract implied-in-fact"); N.J. Model Civil Instr. 4.10C.

Here, as a threshold matter, Defendants effectively concede that there was a valid contract between the parties. (*See* Reply Br. at 9 (arguing that "recovery under unjust enrichment is barred *when a valid, unrescinded contract governs the parties' rights*." (emphasis added))).  Plaintiff here did not attach a contract or plead its terms verbatim but the Amended Complaint makes clear that Plaintiff reached an agreement with Defendants that consisted of definite terms. (*See e.g.,* Am. Compl. ¶¶ 24, 25, 27, 28, 29.)   The Amended Complaint alleges that "Defendants issued an invoice" for the wipes; Defendants attached that invoice to their Motion. (*See* Ex. B).  The invoice memorialized that Plaintiff agreed to purchase 22,000 wipes from Defendant for $71,500, the exact allegations made in the Amended Complaint. (*Id.*)   Moreover, it is clear from the face of the Amended Complaint that the parties performed under the contract, which is sufficient to show mutual assent. *See Weichert Co. Realtors*, 608 A.2d at 284.  As such, the Court concludes that the Amended Complaint plausibly pleads that there was an offer, acceptance, and consideration, and thus, a valid contract. *See On Location, Inc. v. Popovich*, Civ. No. 22-00893, 2023 WL 2674843, at *5 (D.N.J. Mar. 29, 2023) ("While [the plaintiff] did not attach the Commission Agreement or recite its terms, it referenced it by name and pled sufficient facts for Defendant to be on notice as to which agreement was at issue and how he allegedly breached it."); *Latraverse v. Kia Motors of Am., Inc.*, Civ. No. 10-6133, 2011 WL 3273150, at *2 (D.N.J. July 27, 2011) (noting that "[u]nder the Federal Rules, a plaintiff is not required to include the contract with the complaint, or allege the specific provisions violated in the contract" and "the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts

sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond").

Importantly, regarding breach, Plaintiff alleges that it was a basic assumption of the contract—given express assertions Defendants made in writing—that the wipes were new, unexpired, and fit for re-sale. (*Id.* ¶¶ 26, 50.) This allegation is presumed true for purposes of this Motion, and when Plaintiff asserts that it received complaints that the wipes were defective and expired, Plaintiff has sufficiently alleged that there was a breach of an express provision of the contract under the standard required by *Iqbal* and *Twombly*. (*See id.* ¶¶ 31–32.)

The Court likewise rejects Defendants' argument that the breach of contract claim should be dismissed as duplicative of the breach of implied warranties claim. Although vaguely similar, the two claims are distinct in both fact (e.g., whether there was an enforceable agreement that included an express term regarding the expiry of the goods) and legal theory (express terms as compared to terms implied by law).[8]

The Court will therefore **DENY** the portion of Defendants' motion seeking to dismiss the breach of contract claims as duplicative or insufficient pled.

## C.    FRAUDULENT INDUCEMENT

Defendant next argues that Plaintiff fails to state a cause of action for fraudulent inducement because Plaintiff has not satisfied the requisite heightened pleading standard. (Moving Br. at 15.) Plaintiff maintains that its claim has met this standard. (Opp'n Br. at 8–9.)

---

[8] The authority Defendants cite in their brief for the notion that a breach of contract claim should be dismissed as duplicative of a breach of warranty claim is easily distinguishable. In one case, it was an express warranty that formed the basis of the breach of contract claim at issue, whereas the claims in this case stem from two independent terms: one express and one implied. *See Pro-Spec Painting, Inc. v. Sherwin-Williams Co.*, Civ. No. 16-2373, 2017 WL 2106123, at *5 (D.N.J. May 15, 2017) ("Since this [contractual breach] is the same breach as the breach of the express warranty, Count I is duplicative and should be dismissed.")

To establish a claim for fraudulent inducement, a party must allege the following: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity[] and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (citing *Metex Mfg. Corp. v. Manson*, Civ. No. 05-2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008)). Under New Jersey law, courts have "recognize[d] fraud in the inducement as an equitable remedy that may serve as the basis for rescission of a contract." *TekDoc Servs., LLC v. 3i-Infotech Inc.*, Civ. No. 09–6573, 2013 WL 2182565, at *21 (D.N.J. May 20, 2013); *Tonglu Rising Sun Shoes Co. v. Nat. Nine (USA) Co.*, Civ. No. 14-1634, 2016 WL 7374543, at *3 (D.N.J. Dec. 20, 2016). As set forth above, because fraudulent inducement claims sound in fraud, they are subject to the heightened pleading standard of Rule 9(b). *Kare Distribution, Inc. v. Jam Labels & Cards LLC*, Civ. No 09–00969, 2009 WL 3297555, at *4 (D.N.J. Oct. 9, 2009).

Here, the Amended Complaint alleges that "Defendants . . . represented to Plaintiff in writing that the Goods were new and unexpired." (Am. Compl. ¶ 26.) Plaintiff also alleges that Defendants "erased, obscured, or otherwise removed the expiration dates from the packaging of the Goods in order to conceal the fact that the Goods were expired." (*Id.* ¶ 36.) And when Plaintiff later received the remainder of the wipes, it observed that the wipes indeed had expiration dates. (*Id.* ¶ 37.)

These allegations state with particularity that Defendants materially misrepresented the fact that the wipes were unexpired, and that by altering the images, that misrepresentation was made with falsity. Additionally, Plaintiff has submitted photographs, and alleges that "Defendants were aware the Goods were expired," further alleging fraud with particularity. (*Id.* ¶ 41.) The Amended Complaint also states that Plaintiff reasonably relied on Defendant's misrepresentations, that

Defendant "purposefully misled Plaintiff" and that Plaintiff suffered damages as a result. (*See e.g., id.* ¶¶ 56, 57, 58, 62, 59, 60, 64.) At this stage of the proceedings, the writings where Defendant purportedly represented that the wipes were unexpired need not be presented. (*See id.* ¶ 26.) The Court therefore concludes that the allegations taken as true set forth the who, what, where, when, and how, for a plausible claim of fraudulent inducement. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 276–77.

Accordingly, the portion of Defendants' motion seeking to dismiss Count Three (fraudulent inducement) will be **DENIED**.

### D.    BREACH OF IMPLIED WARRANTIES

Defendants also seek dismissal of two of Plaintiff's three claims for breach of implied warranties: the warranties of merchantability and fitness for a particular purpose. Defendants do not challenge the implied warranty of non-infringement claim.[9] The Court separately considers these challenges to each implied warranty below.

### 1.    Breach of the Implied Warranty of Merchantability

Defendants contend that the Amended Complaint does not state a claim for breach of the implied warranty of merchantability because it "does not reach the threshold of alleging that the goods are defective." (Moving Br. at 5.) In their view, the Amended Complaint's allegation that the goods were expired does not suffice to allege that the goods were defective.[10] (*Id.* at 17: Reply Br. at 7.)

---

[9] As stated, Defendants do not challenge Plaintiff's claim for breach of implied warranty of non-infringement in either their moving or reply brief. Plaintiff highlights this silence in its opposition brief. (Opp'n Br. at 11.)

[10] In a single section of their moving brief, Defendants combine their arguments challenging the claims based on the warranties of merchantability and fitness for particular purpose. It makes their position as to each individual claim difficult to parse. Defendants nonetheless then clarify their position in their Reply.

New Jersey implies a warranty of merchantability in every contract for the sale of goods. *See In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, Civ. No. 08–939, 2009 WL 2940081, at *15–16, (D.N.J. Sept. 11, 2009) (citing N.J. Stat. Ann. § 12A:2–314).  New Jersey has adopted the Uniform Commercial Code ("UCC") which provides that merchantable goods must

> (a) pass without objection in the trade under the contract description; and
>
> (b) in the case of fungible goods, are of fair average quality within the description; and
>
> (c) are fit for the ordinary purposes for which such goods are used; and
>
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promises or affirmations of fact made on the container or label if any.

N.J. Stat. Ann. § 12A:2–314.  The warranty "protect[s] buyers from loss where the goods purchased are below commercial standards." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).  To establish a breach of the warranty, a plaintiff "must show that the equipment they purchased from defendant was defective." *Id.*; *see also Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69, 76 (N.J. 1960) (stating that a warranty "simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold").

Here, the Amended Complaint alleges that Defendant breached numerous sections of the New Jersey UCC.  (*See, e.g.*, Am. Compl. ¶¶ 72, 83, 93.)  It asserts Defendants knew Plaintiff was in the business of re-selling products (*id.* ¶¶ 22–23), and that the wipes were defective when

they were expired upon delivery.  (*Id.* ¶ 31.)  The Amended Complaint also alleges that Defendants are merchants, that they did not waive any warranties, and because the wipes were expired, they cannot be re-sold.  (*Id.* ¶¶ 68-81.)  Plaintiff further alleges that a warranty that goods shall be merchantable is implied in every contract, and because the wipes "sold to Plaintiff would not pass without objection in the trade, at least because the Goods were labelled with an expiration date that had passed about eight months earlier," Defendants violated that warranty.  (*Id.* ¶ 84.) Plaintiff adds that the wipes were not of "fair average quality" because they were expired.  (*Id.* ¶ 85.)

The parties each insist that *Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 509 (D.N.J. 2012), supports their own position with respect to whether expired goods are defective for the purposes of a warranty of merchantability.  (*See* Reply Br. at 8; Opp'n Br. at 12.)  In *Crozier*, the district court dismissed a claim for breach of an implied warranty of merchantability on the basis that "[p]laintiffs have not alleged that the [Neosporin] spray was defective or that it failed to provide infection protection and pain relief, the purposes for which it is intended . . ." *Crozier*, 901 F. Supp. 2d at 509.  The court added that the "Complaints contain[ed] no allegations whatsoever about any injuries that [the plaintiffs] sustained and how their use of [the] spray impacted their healing processes." *Id.*

As a first matter, *Crozier* is not binding on this Court.  As a second matter, *Crozier* is readily distinguishable because in that case, the plaintiffs were consumers who purchased the goods *for use* whereas Plaintiff in this case is a re-seller that purchased the goods *for re-sale*. Accordingly, the issue in this case is whether the wipes were suitable for re-sale given that they were expired, not whether they were suitable for use after expiry.  Put another way, Plaintiff asserts an injury flowing from the expiration of the goods, not from the actual condition of the goods themselves.

For the reasons set forth above, the Court finds that the Amended Complaint adequately alleges that the wipes (1) were not merchantable at the time of sale because they were purportedly expired, (2) would not pass without objection, (3) were not of fair average quality, and (4) did not conform to the promises made by Defendants. The Court therefore concludes that Plaintiff plausibly pleads a claim for breach of the implied warranty of merchantability against A&O. *See* N.J. Stat. Ann. § 12A:2–314. Accordingly, the Court will **DENY** the portion of the Motion seeking to dismiss Plaintiff's claim for breach of the warranty of merchantability.

2.    Breach of the Implied Warranty of Fitness for Particular Purpose

Defendant next argues that Plaintiff fails to allege a "particular purpose that differs from its alleged ordinary purpose," and "Plaintiff does not allege facts sufficient that the goods were defective—only that they were allegedly expired." (Moving Br. at 17.)[11]  Plaintiff maintains that it alleges a particular purpose that differs from its ordinary purpose and that the wipes were defective. (Opp'n Br. at 12–13.)

In New Jersey, the implied warranty of fitness for particular purpose provides that

> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.J. Stat. Ann. § 12A:2–315.

---

[11] Defendants' brief includes a section devoted to "caveat emptor." (*See generally* Moving Br. at 12–13.) Defendants suggest that Plaintiff had pre-existing knowledge that the wipes could be expired or lacked expiration dates because Defendants provided Plaintiff with an Amazon link to the wipes, which purportedly showed that the "official or [] authorized affiliate" who sold the wipes on Amazon also received negative reviews due to the expired wipes. (*Id.* at 12.) Defendants add that the "pricing of the [wipes] should have served as an additional indicator of their condition." (*Id.* at 13.) The Court does not address these arguments because they involve assertions of fact outside the Amended Complaint and they are therefore beyond the scope of the Court's review on a motion to dismiss.

Here, the Amended Complaint alleges that the goods were not fit for re-sale, given that they were expired.  (Am. Compl. ¶ 68; 94.)  More specifically, Plaintiff contends that Defendants "had reason to know that Plaintiff required the Goods for the particular purpose of re-selling the Goods as new on the Amazon.com marketplace," but that the wipes were not suitable for that purpose because they were expired.  (*Id.* ¶ 94–95.)

"It is axiomatic that a product's ordinary purpose cannot be the same as its particular purpose; without that distinction, there can be no claim for breach of implied warranty of fitness for a particular purpose."  *Franulovic v. Coca-Cola Co.*, Civ. No. 07-539, 2007 WL 3166953, at *6 (D.N.J. Oct. 25, 2007) (citing *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 615 (D.N.J. 2002)) (dismissing a plaintiff's breach of the implied warranty of fitness for a particular purpose claim because plaintiff did not "allege[] a particular purpose of [the product] that differ[ed] from its alleged ordinary purpose" which was a "fundamental flaw in [plaintiff's] claim").[12]  Based on its review of the pleading, the Court agrees with Defendants and concludes that the Amended Complaint does not allege a particular purpose that is distinct from the products' ordinary purpose.  The Court will therefore **GRANT** the portion of the Motion seeking to dismiss Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose.  This dismissal will be without prejudice.

### E.    UNJUST ENRICHMENT

Lastly, Defendants contend that Plaintiff's claim for unjust enrichment is duplicative of its breach of contract claim.  (Moving Br. at 18–19.)  Plaintiff however argues that it may plead its claims in the alternative.  (Opp'n Br. at 13.)

---

[12] Moreover, the Court concludes that the implied warranty of fitness for a particular purpose claim is duplicative of Plaintiff's implied warrant of merchantability claim given that both stem from the theory that the wipes when sold and delivered were expired, and thus defective, contrary to Defendants' assertions.

"To establish a claim of unjust enrichment in New Jersey, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Hughes v. Panasonic Consumer Elecs. Co.*, Civ. No. 10-846, 2011 WL 2976839, at *26 (D.N.J. July 21, 2011) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007)).  "[T]he equitable remedy of unjust enrichment is not available when there is a valid contract" between the parties.  *Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*, Civ. No. 06-4449, 2009 WL 900758, at *7 (D.N.J. Mar. 31, 2009) (*citing Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)). "Furthermore, unjust enrichment 'requires that [the] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Hughes*, 2011 WL 2976839, at *26 (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994)).  Also, "a claim for unjust enrichment requires a direct relationship between the parties."  *Hammer v. Vital Pharms.*, *Inc.*, Civ. No. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012) (citations omitted); *see also Bedi v. BMW of N. Am., LLC*, Civ. No. 15-1898, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) ("[T]here must be a direct relationship to assert an unjust enrichment claim.").  "[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim."  *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998).

Relevant here, the Third Circuit allows for pleading in the alternative when a plaintiff brings claims for both breach of contract and unjust enrichment, so long as the "the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) (internal citations omitted).  Moreover, the Federal Rules of Civil Procedure permit plaintiffs to plead alternative

theories of recovery.  Fed R. Civ. P. 8(d)(2); *See In re K–Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (finding it would be premature to dismiss the unjust enrichment claim on a motion to dismiss as the plaintiffs were "clearly permitted to plead alternative theories of recovery"); *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (noting that an "[a]n unjust enrichment claim may be sustained independently as an alternative theory of recovery").

Here, Plaintiff permissibly brings claims for breach of contract, fraudulent inducement, and unjust enrichment under Rule 8(d)(2) and this Circuit's precedent.  That being said, Plaintiff's contract claims could fail (and Defendants, among several arguments, disputes the validity of the contract), which is why Plaintiff may assert unjust enrichment claims in the alternative.  Moreover, Plaintiff's allegations here of fraudulent inducement amount to a dispute over the validity of the contract, which further bolsters the argument that unjust enrichment could be a viable alternative remedy.  *See JJD Elec., LLC v. SunPower Corp., Sys.*, Civ. No. 22-1275, 2024 WL 3219294, at *10 (D.N.J. June 28, 2024) (permitting claim for fraudulent inducement to proceed on the basis that the plaintiff's allegation of fraudulent inducement constituted a dispute to the validity of the contract at issue).  Accordingly, the Court will **DENY** the portion of the Motion seeking to dismiss the claim for unjust enrichment.

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion to Dismiss (ECF No. 15.)  Plaintiff's breach of contract, implied warranty, and unjust enrichment claims against individual Defendants Bassoul and Arazi will be dismissed without prejudice.  Additionally, Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose will be dismissed without prejudice.  Plaintiff is given leave to amend its

Complaint on these claims that were dismissed with prejudice.  Moreover, Plaintiff's breach of contract claim against A&O, fraudulent inducement claim against all Defendants, breach of the implied warranty of merchantability claim against A&O, breach of the implied warranty of non-infringement claims against A&O, and unjust enrichment claims against A&O will survive.  An appropriate Order will follow.


Date: December 23, 2024

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
